UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          CRIMINAL ACTION

VERSUS          NO: 24-165

LATOYA CANTRELL          SECTION: "D" (4)

## ORDER

LaToya Cantrell ("Cantrell"), filed the subject motion seeking to **Modify/Amend Condition of Bond Conditions (R.doc. 69)**. The Plaintiff, United States of America opposes the Motion. R. doc.75. Cantrell filed a reply to the government's opposition. R.doc. 78. The Court orally denied the motion November 18, 2025, and submits these written reasons to explain the reasons for the denial.

### I. Factual Summary

Cantrell and her co-defendant Jeffrey Vappie ("Vappie") are charged in an eighteen-count indictment with one count of conspiracy to commit wire fraud[1], twelve counts of wire fraud[2], one count of conspiracy to obstruct justice[3], one count of making false statements to law enforcement authorities[4], and one count of obstruction of justice[5]. Further Cantrell was charged with two counts of making a false declaration before a grand jury[6] (See Doc. No. 34.)

Cantrell appeared before the undersigned on September 10, 2025, for an initial appearance and arrangement to which she pled not guilty. The Court without objection from the government released Cantrell on a personal recognizance bond. (R. doc. 47.) The Court further released Cantrell on standard conditions of release, without objections. Id. The Court determined that

---

[1] Violation of Title 18, United States Code, Sections 371 and 1343
[2] Violation of Title 18, United States Code, Section 1343
[3] Violation of Title 18, United States Code, Section 1512(k)
[4] Violation of Title 18, United States Code, Section 1001
[5] Violation of Title 18, United States Code, Section 1512(c)(1),
[6] Violation of Title 18, United States Code, Section 1623.

given the nature of the charges which included conspiracy to obstruct justice a limited no unsupervised contact order was warranted.

The order reads:

> "Defendant shall not have contact with co-defendant without the presence of one of the party's counsel of record." (Doc. 48, Pg. 3)."

Cantrell objected to this portion of the order. The undersigned noted the defendant's objection for the record and entered the order with the no unsupervised contact order as noted above

Two days after Cantrell's initial appearance and arraignment, Vappie was arraigned on the superseding indictment. (R. Doc. 51.) Thereafter, the Government filed a motion to amend Vappie's original bond conditions, previously set in August 2024 after the original one-defendant indictment, to mirror Cantrell's bond condition prohibiting unsupervised contact with Vappie. (R. Doc. 63.) After extensive briefing and a contested hearing, on October 31, 2025, Magistrate Judge Currault granted the Government's motion and like the undersigned magistrate judge's original order issued a no unsupervised contact order bringing both bond orders into alignment. (R. Doc. 74.)

Cantrell now seeks an order from the Court modifying its order limiting her contact with her codefendant pursuant to § 3142(c)(3). According to Cantrell the Court's original order should be modified because she is does not present a risk of flight and nor is she a danger to the community. Therefore, Cantrell contends that the Court's original bond restriction violated her constitutional right of association and her Fifth Amendment's rights to Due Process of Law. She also asserts that the condition somehow runs afoul of her presumption of innocence. R. doc. 71.

As a result, Cantrell seeks a modification of the original bond order permitting her to have unrestricted access to her codefendant, Mr. Vappie. R. doc. 75. According to Cantrell, she and. Vappie should only be prohibited from communicating if doing so would not assure Cantrell's appearance, or to avoid any "so-called danger" that she may present, which according to Cantrell is zero. R. doc. 78. Finally, Cantrell further contends that the Government has presented no evidence or argument that prohibiting the co-defendants from communicating without counsel is not appropriate or suggest that somehow granting her unfettered access to her codefendant would manipulate or harm the Government's case. Id.

II. **Standard of Review**

The Bail Reform Act, 18 U.S.C. § 3142, governs whether a defendant should be released or detained pending trial. Where the court determines that release is appropriate, it may condition a defendant's pretrial release on the defendant's satisfaction of one or more conditions, as long as those conditions are the least restrictive necessary to reasonably assure the appearance of the defendant as required and the safety of any person and the community. See 18 U.S.C. §§ 3142(c)(1), (c)(1)(B).

The Act expressly permits conditions that require a defendant to "abide by specified restrictions on personal associations," "avoid all contact with . . . a potential witness who may testify concerning the offense," and "satisfy any other condition that is reasonably necessary . . . to assure the safety of the community." 18 U.S.C. §§ 3142(c)(1)(B)(iv), (v), (xiv). Precluding contact between a defendant and specified other individuals without appropriate supervision falls under § 3142's emphasis on protecting the community. See, e.g., *United States v. Jackson,* No. 24-164, 2025 WL 1032028 at *2 (W.D. Wash. Apr. 7, 2025). In determining the appropriate conditions, a court must consider: (1) the nature and circumstances of the offense; (2) the weight

of evidence against the defendants; (3) the history and characteristics of the defendants; and (4) the nature and seriousness of the danger posed by release. 18 U.S.C. § 3142(g).

### III. ANALYSIS

Cantrell contends that the no-contact order should be modified because it constitutes an unnecessary condition of release and is more restrictive than necessary "to reasonably assure the appearance of the person [Ms. Cantrell] as required and the safety of any other person in the community…." 18 U.S.C. 3142(c)(1)(B). R.doc. 69-1. Cantrell contends further that the least restrictive conditions can be met with the recommendation that she have no contact with victims, witnesses, and cannot discuss case related material with her codefendant, Vappie but may have contact with him without presence of counsel, consistent with the Pretrial Services findings, and "the least restrictive further condition…." Id. Additionally, Cantrell contends that the prohibition of speaking to witnesses would not apply to contact with Vappie because it cannot be lawfully assumed that either she or Vappie will testify, according to the Fifth Amendment. Id.

The government however contends that the request should be denied. First, the government points out that Cantrell does not explain how imposing a condition expressly permitted under several portions of the Bail Reform Act—18 U.S.C. §§ (c)(1)(B)(iv), (v), (xiv)—and imposed by myriad courts, offends any of the constitutional protections she lists. See supra. at 4-5, R.doc. 75. Further the government contends that Cantrell neglects to explain how the "presumption of innocence," Doc. No. 69-1 at 5, restricts the Court's ability to impose a no-unsupervised-contact provision. Id. As aptly pointed out by the government, the Bail Reform Act, including its provisions permitting numerous bond conditions and detention pending trial, applies before an indictment has been adjudicated, when every defendant enjoys the presumption

of innocence. Id. Also, the government contends that none of the cases on which Cantrell relies are either controlling precedent or germane to the facts at issue here. Id.

Having set forth the position of the parties, the Court notes that Cantrell does not identify a single change in facts or circumstances, much less a significant one, since the Court set the bond conditions less than two months ago. The only change in circumstances offered by Cantrell is that the trial date was oroginally set on November 17, 2025, at the time of the initial appearance and she admits that she was aware that it was not expected to take place that soon.

Nevertheless, because the date has been continued to October 19, 2026, almost a year later, Cantrell contends that this date change constitutes a change in circumstances warranting a review of the September bond condition. The essence of Cantrell's argument is that a three month delay in her ability to communicate with Vappie as opposed to a twelve month delay, renders the bond condition violative Cantrell's rights.

Regarding Cantrell's contention that the change in trial date constitutes a change in circumstances, the Court finds that this argument falls short of a real change. First, all lawyers know that the initial date of the trial would be continued so as to allow the attorneys to prepare and share the discovery that the government has obtained that supports its theory of the case. Second, it is further not unusual for the matter to be continued for a year as happened in this case. Third, Mr. Castaing, Cantrell's attorney did not object to the continuance to the new date which was the result of attorney calendar conflict. R.doc. 62.

Notably Cantrell fails to cite any case law that supports her theory of substantial change in circumstances. Further the cases cited by Cantrell are not factually or substantively similar and

they lack persuasive authority in any respect.[7] The Court therefore finds that Cantrell's counsel has failed to establish a change in circumstances.

Even though Cantrell has failed to meet her burden of establishing a change in circumstances, if the Court were to consider her argument of her right to associate and the alleged violation of her due process rights, these arguments fail. This court originally found that it is appropriate to have a no-unsupervised-contact order due the character, nature and weight of the evidence of the alleged conspiracy to obstruct.

Further, since this Courts original bond order was issued, Judge Carrault was presented with a motion by the government to conform her order to the original order issued by the undersigned magistrate judge as to Cantrell. Finding that a changed in circumstance favored maintaining the no-unsupervised-contact condition, in late October 2025, Judge Currault modified the bond conditions of Vappie and added a no-unsupervised-contact condition. See Doc. No. 74. The condition, in fact, was the same as this Court's original order and which the government sought to preserve.

As explained to counsel during the status conference before the initial appearance that the obstruction conspiracy allegation caused the Court some concern regarding the requested

---

[7] *United States v. Kar*per, 847 F. Supp. 2d 350 (N.D.N.Y. 2011), concerned the imposition of mandatory bond conditions (namely home detention and electronic monitoring) for defendants charged with child exploitation offenses, because the "Adam Walsh Act Amendments" (under the Adam Walsh Child Protection and Safety Act) to the Bail Reform Act for those crimes alter the otherwise-standard "least restrictive conditions" analysis in § 3142(c)(1). See id. at 36.

Cantrell relies most heavily, is an even older analysis of the Adam Walsh Amendments also from the Second Circuit, concluding that the "Adam Walsh Amendments are facially unconstitutional." Doc. No. 69-1 at 4. (*United States v. Arzberger*, 592 F. Supp. 2d 590, 604 (S.D.N.Y. 2008)). While the Fifth Circuit has not directly ruled on this issue, it recently quoted with approval the Eighth Circuit case that upheld the Adam Walsh Amendments as constitutional. "Congress may ban bail in entire classes of cases, because the Eighth Amendment 'fails to say all arrests must be bailable.' ... We see nothing in the Supreme Court's relevant precedents to indicate the Adam Walsh Act's much less restrictive mandatory release conditions are facially unconstitutional." *United States v. Quiroz,* 125 F.4th 713, 718 (5th Cir. 2025), cert. denied, No. 24-7342, 2025 WL 2823956 (U.S. Oct. 6, 2025) (quoting *United States v. Stephens*, 594 F.3d 1033, 1039 (8th Cir. 2010)).

unfettered access to her codefendant. The indictment alleged that Cantrell and Vappie conspired to obstruct the due administration of justice from at least October 2021 through the date of the superseding indictment, August 15, 2025. Specifically, the grand jury alleged that Cantrell and Vappie perpetrated their obstructive conduct by destroying, withholding, and creating false evidence, using a secure messaging application to communicate, influencing subordinates, intimidating citizens, lying to law enforcement authorities, and making false statements to a grand jury. (See id. at 30-31.) The very essence of a conspiracy is a conversation. As a result, while the pretrial officer recommendation was to grant unrestricted access, the officer had not considered the allegations in the indictment. (See id. at 30.)

Further case law supports the limited unsupervised contact order. In *United States v. Paquin*, 676 F. Supp. 3d 970 (D.N.M. 2021), concerned the viability of a no-contact order that was not a bond condition, but instead applied while the defendant was detained pending trial. In its ruling, the district court expressly recognized that the Bail Reform Act permitted no-contact orders while a defendant was on pretrial release. See id. at 974-75 (noting that other authorities with different standards, such as 18 U.S.C. § 1514 or courts' inherent powers, govern no-contact orders for detained parties).

Mindful of its obligation to impose conditions that are no more restrictive than necessary to achieve § 3142's purposes, the Court has considered this requirement, in light of Defendant's motion. One possibility might have been to permit the Defendant to have contact with Vappie only with the permission of her supervising probation officer. Cf. *United States v. Rodriguez*, 178 F. App'x 152, 159 (3d Cir. 2006) (upholding special condition of supervised release to that effect). *See United Sates v. Olivarez,* 2022 WL 16836338 ( S.D. Tx Nov. 9, 2022) .

In fact, the Court issued an order permitting contact in the presence of their counsel so as to facilitate the preparation of their defense in this case. To permit unfettered contact as suggested by Cantrell would not sufficiently ensure that Defendant and Vappie would not collude to commit further deceitful, or perhaps even obstructive or criminal, conduct, endangering the safety of others or the community and threatening the integrity of the judicial process. The Court concludes that unsupervised no-contact order as currently imposed is the least restrictive means to achieve the purposes of § 3142.

Accordingly,

**IT IS ORDERED** that **Modify/Amend Condition of Bond Conditions (R.doc. 69)** is **DENIED.**

New Orleans, Louisiana, this 28th day of November 2025.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**